# 8359

NO. 8359

COURT OF APPEAL

PARISH OF ORLEANS

FRIEDRICHS & DUPAS

versus

HIBERNIA BANK & TRUST CO. ET AL.

Dinkelspiel; J.

In order to properly determine the questions involved in this litigation, we give a portion of the plaintiff's petition, which asserts:

"That on October 1, 1920, knidxpartnarxkix plaintiff leased the premises 325 Carondelet Street and 804 Union Street, comprising a portion of the lower floor of the building, forming the corner of Carondelet and Union Streets, in the square bounded by Carondelet, Union, Raxida Perdido and Baronne Streets.

That said premises, 804 Union Street, were leased by said partnership for the purpose of sub-leasing the same, and that said partnership could have obtained tenants therefor at a monthly rental of $150.00 a month, but for the fact that the Hibernia Bank & Trust Company was having constructed by the George A. Fuller Company, a corporation doing business in this City, a 20-story building directly across Union Street from said premises, 804 Union Street, and, in connection with said work, erected in front of and above said premises, a structure, and also erected bins and continually piled building materials on said sidewalk, thereby rendering said premises uninhabitable or unsuited for carryong on any business therein; that on or about January 11, 1921, the said George A. Fuller Company, contractors of the Hibernia Bank & Trust Company, as aforesaid, removed said structure from Union Street and placed immediately in front of said premises a chute leading to the upper story of the new Hibernia Bank & Trust Company building, which chute was used to carry all the debris from said 20-story building to the street surface and rendered it impossible to use said premises for any purpose whatever, and at or about that time, said George A. Fuller Company boarded up the glass doors of said premises, in order to prevent the debris from said building across the street breaking the glass thereof.

That by the acts hereinbefore recited of the said Hibernia Bank & Trust Company and the George A. Fuller Company,

779

petitioner has been deprived of the use of the said premises, 804 Union Street, since October 1, 1920, and is still unable to use the same.

That the construction of said new Hibernia Bank & Trust Company building across the street caused the ground to rise under the floors of said premises, 804 Union Street, and make them buckle up in such a way as to make it impossible to use said premises for any purpose whatsoever, even if the said chute and the purposes for which it is used did not prevent the use thereof.

That petitioner is entitled to a judgment, in solido, against said Hibernia Bank & Trust Company and said George A. Fuller Company, for the rental value of said premises, 804 Union Street, at the rate of $150.00 a month from October 1, 1920, to such time as said premises are repaired, restored and put in such condition that they can be used by tenants, and the said chute is removed from the street in front of the said premises.

To this petition the Hibernia Bank & Trust Company filed an exception on the ground that the petition discloses no right or cause of action. On the trial of this exception same was maintained and the suit dismissed. Hence this appeal.

In support of the exception filed by the learned counsel for the defendant in this case, they refer us to the case of Heine et al. vs. Merrick et. als, to be found in the 41st Ann. at from page 195 to 209, wherein the question mainly of party walls and the rights of the owners were fully discussed and the question there was as to the right of the contiguous owners claiming damages. Under the circumstances and articles of the Civil Code applicable to same the owners whose property had been invaded had not a right to sue in damages for such invasion, and it was held:

"In demolishing the old and building the new party wall, under the conditions fully proved in this case, plaintiffs

780

exercised an absolute right conferred upon them by the law. Under
the maxim neminem laedit qui jure suo utitur, they were not bound
to indemnify their neighbor for any inconvenience or injury neces-
sarily occassioned by the exercise of the right. Such a work
must of necessity incommode the neighbor. It cannot be prosecuted
without an entry upon and partial occupation of his premises. It
must disturb his enjoyment and that of tenants. It may give ground
for the annulment of his lease or for a diminution of rents. It
may prevent the renting of his property. It may injure him in
many ways. But so long and in so far as these injuries are in-
separable from the exercise of the right, the neighbor is bound
to submit to them and can claim no indemnity therefor."

The Court goes on, on page 207 to define the rights of
the proprietor:

"But, on the other hand, plaintiffs are responsible
for every exaggeration of these necessary damages, which, by any
diligence, they could have prevented. They were bound, by every
means in their power, to reduce to a minimum the injury and incon-
venience occassioned to their neighbor; to occupy his property to
the least extent and for the shortest time consistent with the ex-
ercise of their right; and to hasten, by all practical means, the
completion of the wall and the restoration of the neighbor to the
full enjoyment of his property.

They were, moreover, bound, at their peril, to replace
the neighbor, at the end of the work, in a position equal in every
respect to that which he occupied in the beginning, and to furnish
him a wall fit and adequate to support his buildings without injury.[8]

In the case of Levy vs. Fenner and others, 48 Ann.
p. 1390, the same questions more or less were involved. The Court
a quo in that case reserved the right of the plaintiff to claim for
injury to the plastering and papering on the walls and inconvenience
caused by the rubbish and debris left on his premises by defendants
and the expense of the removal of same, as well as for rents lost
by the unnecessary protraction of the work—all of his claims for

781

these items being dismissed as of non-suit.

The pray in that case was for the recover of $2770.00, for damages incurred as already stated, and there defendant excepted on the ground:

"That they were not answerable for the damages claimed, because they had the legal right to build the larger and heavier building which they constructed on their property as alleged in the petition, and to tear down the old party wall separating said new building from the building of the plaintiff, and to build a new party wall of greater width, height and thickness than the old one, necessary to support said new and heavier building; and that plaintiff was bound to submit to the loss and inconvenience resulting from the proper execution of said work.

That, in the exercise of said legal rights, they entered into a contract with a competent and trustworthy builder, to construct said new building, including the demolition and reconstruction of said party wall, and the restoration of the plaintiff's building, all of which he bound himself to do in a proper and workmanlike manner; and that they yielded up to said contractor and builder the entire possession and control of said premises and work, reserving to themselves no direction or control as to the manner of doing the work, or as to the persons whom he should employ therein."

In a very elaborate opinion in that case, the Court finally decided, that notwithstanding absolute right of the owner to do the work required in that case, yet, if it cannot be prosecuted without an entering upon and partial occupation of the premises, it ~~without~~ may give ground for damages in annulment of leases or for diminution of rents, and it may prevent the renting of his property; but on the other hand plaintiff are responsible for any exaggeration of these necessary damages, which, by any diligence, they could have prevented.    They were bound, by every means in their power, to reduce to a minimum the injury and inconvenience occassioned

to their neighbor; to occupy his property to the least extent and for the shortest time consistent with the exercise of their right; and to hasten, by all practical means the completion of the wall and the restoration of the neighbor to the full enjoyment of his property.

They were, moreover, bound, at their peril, to replace the neighbor, at the end of the work, in a position equal in every respect to that which he occupied in the beginning, and to furnish him a wall fit and adequate to support his buildings without injury."

In the case of Higgins Oil & Fuel Company vs. Guaranty Oil Co. 145 La. p. 235, the Court in/~~discussing~~ defining article 491-505 in reference to ~~practical~~ perfect ownership of the soil, at page 238, quoting from Pothier: "Ownership may be defined to be the right to dispose of a thing as one pleases, provided the rights of others are not thereby infringed, or some law violated."

And on page 243: "When a neighbor has legitimate grounds of complaint against the acts of another owner, what is the result of the suit he brings? There can be no doubt that the courts can allow damages to the extent of the prejudice that has been caused. The indemnity must first make good the damage suffered in the past, and not alone that suffered since the putting in default. Article 1146 (1926 La. Code) has no application to matters of offense and quasi offenses. The Courts can, moreover, award damages in reparation of the prejudice which will occur in the future, if things remain in the same condition. So long as the injurious fact subsists, the prejudice continues to be certain, and the courts may take into consideration the future consequences of this known fact in order to save the parties from the too frequent renewal of the same suit; the judgment, it is true, in so far as relating to the future, will have a conditional character. The condemnation will be subordinated to the continuance of the actual prejudice, which will allow the parties to ask at any time its modi-

fication, accordingly as the prejudice may increase or diminish, or cease altogether."

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from, is therefore set aside, the exception of no cause of action overruled, and the case is remanded for trial.

-Judgment reversed and remanded-